### Minnie E. Dyer v. J. T. McWhirter.

Decided May 30, 1908.

**1.—Secondary Evidence—Sufficiency of Predicate—Revision on Appeal.**

While the sufficiency of a predicate to admit secondary evidence is addressed to the sound discretion of the trial court, the exercise of such discretion in a given case may be reviewed by an Appellate Court.

**2.—Same—Insufficient Predicate.**

As a predicate for the admission of secondary evidence of the contents of a letter, the party offering the evidence testified, in substance, that he did not have the letter with him at the time of the trial and had not seen it lately, and had made no search for it. Held, insufficient.

**3.—Same—Same.**

As a predicate for the admission of secondary evidence of the contents of a letter, the party claiming to have received the same testified, in substance, that he left the letter at a certain store and had not seen it since; that he did not know where the letter was at the time of the trial; that he did not think it important enough to keep, and just left it at the store. Held, insufficient.

**4.—Attorney and Client—Privileged Communication—Evidence.**

Statements by a client to his attorney concerning the facts of a suit about to be filed, are privileged, and the client can not be required to divulge the same on the trial.

**5—Contract—Performance—Charge.**

In an action for money alleged to be due upon a contract, the court charged the jury to find for plaintiff if they believed from the evidence that he had complied with his contract "as a person should do, or was prevented from so doing by defendant." Held, that the phrase "as a person should do" was surplusage and should have been omitted.

Appeal from the County Court of Armstrong County. Tried below before Hon. R. D. Doak.

*H. B. White* and *J. S. Stallings,* for appellant.

*W. A. Wilson* and *J. R. Jackson,* for appellee.—The amount of proof required to establish the loss or destruction of a written instrument, secondary evidence of which is offered, is within the sound discretion of the court, and will not be disturbed without a showing of clear abuse of discretion and manifest error. Talliferro v. Rice, 103 S. W., 466; Price v. Oatman, 77 S. W., 259; Waggoner v. Alvord, 16 S. W., 1083; Mays v. Moore, 13 Texas, 88; Cheatham v. Riddle, 8 Texas, 167.

Any statement made by a party to his attorney is a privileged communication and can not be inquired into without the consent of the client and the attorney. Ft. Worth & D. C. Ry. Co. v. Lock, 70 S. W., 456; Birmingham R. & El. Co. v. Wildman, 119 Ala., 547 (24 So., 548).

PRESLER, ASSOCIATE JUSTICE.—This suit was instituted by appellee, as plaintiff below, the 23d day of February, 1907. The petition was amended, upon which amended pleading on the part of appellee trial was had. It was in substance therein alleged that on October the 26th, 1905, the plaintiff and defendant entered into a written contract involving the rent of defendant's farm near Goodnight, Texas, in Armstrong County, and the care of certain live stock belonging to defendant ranging in her pasture adjoining said farm. Said contract, as set out in plaintiff's said amended pleading, is here set out in full, and is in words and figures as follows: "Goodnight, Texas, Oct. 26, 1905. This contract is entered into between Mrs. Minnie E. Dyer and Mr. J. T. McWhirter, whereby Mrs. M. E. Dyer agrees to rent to Mr. J. T. McWhirter her farm on what is known as the Sam Dyer place, about two miles east of Goodnight, from December 1, 1905, to December 1, 1906, J. T. McWhirter agreeing to plant all of the ground now in cultivation, about one hundred acres, with a privilege of breaking up and planting new land adjoining, if he wishes. He, J. T. McWhirter, to furnish implements, work stock and feed, and to keep fences and premises in good repair. The rent to be paid by him to Mrs. Dyer, one-third of all the crop raised, to be delivered in the stack. The stubble remaining in the fields after crop is gathered to be Mrs. M. E. Dyer's property. When the crop is gathered and properly stacked, J. T. McWhirter to give Mrs. M. E. Dyer the refusal of purchasing such amount of his share of the crop as he wished to dispose of. In consideration of $240 per year to be paid by Mrs. M. E. Dyer to J. T. McWhirter, the latter agrees to keep in good condition and in working order, the fences and windmills in Mrs. Dyer's pasture on the above mentioned place, windmills to be oiled at least once a week, oftener if necessary; Mrs. M. E. Dyer to furnish material for repairs. Mr. J. T. McWhirter is to look after Mrs. M. E. Dyer's stock, both cattle and horses, in said pasture, and give them such food and attention as is necessary to keep them in good condition, and prevent them from straying, and to move same as occasion may require. Mrs. M. E. Dyer to furnish the necessary feed and stock salt, J. T. McWhirter to do all necessary hauling of same.

"Mr. J. T. McWhirter is to have the privilege of keeping in Mrs. M. E. Dyer's pasture on said place forty head of stock, providing they are his own property. J. T. McWhirter agrees to feed and care for the hogs belonging to Mrs. M. E. Dyer on said place, for which Mrs. M. E. Dyer agrees to give him one-half of the increase. J. T. McWhirter agrees

to see that no property belonging to Mrs. M. E. Dyer shall be removed from above place, nor will he recognize or act upon any instructions relative to above property except coming directly from Mrs. M. E. Dyer, or above her signature.

(Signed) J. T. McWhirter,<br>Minnie E. Dyer."

Plaintiff alleged in his said amended pleading that he took possession of said premises under the contract with defendant, and in all things complied with the terms of said contract; that he cultivated all the land upon said premises formerly in cultivation, and that he set aside for defendant one-third of the crop raised; that he kept in good repair the premises in question, including fences and windmills, complying in that particular with his contract; that he properly fed and cared for the cattle and horses belonging to defendant, and in that particular in all things complied with said contract; that defendant has paid him for such services only the sum of $60, leaving a balance due him under his contract amounting to $180, which amount he sought to recover. He further alleged that he purchased repairs for one of the windmills in question at the cost of $15, for which defendant refused to pay, by reason of such refusal he was compelled to pay for same himself. Also that he purchased kaffir corn to feed defendant's live stock paying therefor the sum of $24, for which defendant refused to pay, and that he sold hides to the amount of $18 applying same on said last item of indebtedness, leaving a balance due him of $6.00.

He further alleged that defendant, in the exercise of her option in the rental contract hereinbefore set out, agreed through her agent, H. B. White, to purchase, at the market price, his entire part of the crop raised, amounting to 125 tons in all, and alleging the market price to be $3.00 per ton; that defendant afterwards refused to take his part of said crop, as she had agreed to do, and he attempted to market same and succeeded in selling 23 tons at $3.50 per ton; that by reason of defendant's failure to take said crop he was damaged in the sum of $284.50, which amount he also sought to recover, making the total amount of damages sought to be recovered the sum of $470.50.

Appellant pleaded a general demurrer and several special exceptions to appellee's amended pleading, and with reference to the merits of the case, in addition to the general issue, pleaded specially and by way of reconvention, a failure on the part of appellee to comply with his rental contract, by failing and refusing to properly feed, look after and care for the cattle mentioned in the contract; that he neglected same, by reason of which neglect 30 head of said cattle reasonably worth $450 died. Appellant also alleged in said plea in reconvention that appellee breached his said contract in that he failed to keep in repair the fences and windmills on the leased premises; that he failed to keep the windmills oiled and in proper repair, by reason of which fact they became an easy prey to the high winds, and that they were thereby greatly damaged in the sum of $75, the amount alleged that it would require to put them back in repair. Appellant alleged that appellee having breached his said contract she was not liable, but that she had sustained damages on account of appellee's said failure to comply with said contract in the

sums of money just mentioned, which amounts she sought to recover over against appellee.

Trial was had before a jury on September 5, 1907, resulting in a verdict and judgment for appellee in the sum of $214.50, and for the further recovery of sorghum feed left on the leased premises by appellee. Appellant moved for a new trial without success, gave notice of appeal, filed appeal bond, and assignments of errors, and the case is now before this court for revision.

We conclude that appellant's first assignment of error, wherein she complains of the admission in evidence over her objection, in the testimony of appellee, of the contents of a certain letter claimed to have been received from appellant instructing appellee not to feed the cattle after April 15, 1906, is well taken and should be and the same is here sustained, and that as shown by the evidence appellee did not sufficiently account for the loss of the original, nor did he make a reasonably diligent effort to produce the same on the trial of this case in order to be allowed to make secondary proof of the contents of said letter. Appellee testified: "The reason I quit feeding them was because I received a letter from Mrs. Dyer, who lived in Waverly, Missouri, in which she told me not to feed later than the 15th of April. I have not got this letter with me and have not seen it lately. I have made no search for it. Twenty-eight head of cows died during March and April of that year." The case of Taliaferro v. Rice, 47 Texas Civ. App., 3, and cases there cited, conclusively sustain our holding here that this court is authorized to inquire into the sufficiency of the proof offered as a predicate for the admission of secondary evidence admitted in this case, and that while objections to the admission of secondary evidence are addressed to the sound discretion of the trial court, it is not an arbitrary discretion, but a discretion subject to frequent revision by the appellate courts, and the case *supra* and authorities there cited clearly support our conclusion here that the appellee failed to satisfactorily account for the loss of the original letter or to show any diligence in endeavoring to produce it in the trial court, and we conclude that the evidence, to wit, the contents of the letter so improperly admitted, materially affected to appellant's prejudice an important issue in this case, to wit, the question of appellee's liability for the loss of a part of the cattle, for which loss appellant in her plea in reconvention sought a recovery against appellee.

Appellant's second assignment raises in substance the same objection as in her first assignment; as to the admission of an alleged note claimed by appellee to have been written him by one, H. B. White, as agent of appellant, and we are of the opinion that appellee's testimony offered in support of the admission of this evidence fails to show such effort to produce the original as would make secondary proof admissible. Appellee testified: "I left the note from Mr. White, in which he wrote me that he would buy the feed and that Mr. Landers would help to weigh the feed, at Mr. Prather's and haven't seen it since. I have made no search for it, but my wife told me she did. I don't know where it is now. No, I didn't think it important to keep it, just left it there." We therefore conclude that said second assignment of error should be sustained.

Appellant in her third assignment of error complains of the action of the court in refusing on cross-examination of appellee to permit her to

inquire as to what appellee told his attorneys at the time the original petition was drawn and filed with reference to the price then claimed to have been placed by appellee on some feed, the price of which is involved in this suit. We are of the opinion that the question and the answer sought to be elicited related to matters that were privileged communication between appellee and his counsel, and that the trial court correctly held that they were not admissible in testimony over appellee's objection. Said assignment is therefore overruled.

Appellant's fourth assignment of error, which is to the effect that the trial court erred in permitting J. T. Prather to testify for plaintiff to a material fact, to wit, the contents of a note claimed by plaintiff to have been written by H. B. White as agent of the defendant, we conclude to be well taken and said assignment is here sustained because it does not appear from the evidence that the original had been satisfactorily accounted for, or that the appellee showed diligence in searching for and endeavoring to have said letter on the trial of this case.

Appellant's fifth assignment of error attacks the first paragraph of the court's charge, alleging that said charge failed to correctly instruct the jury as to the "issue in the case." We are of the opinion that in succeeding paragraphs of the court's charge the force of this objection is removed as to the particular matter complained of and as set forth in appellant's statement under this assignment, and further, that if the objection were well taken appellant under the rules waived the same by not requesting a special charge. The assignment is overruled.

We conclude that the phrase "as a person should do" embraced in the second paragraph of the court's charge is subject to criticism as being surplusage and unnecessary and should have been omitted in framing said paragraph of the charge.

We are of the opinion that appellant's seventh assignment of error should be sustained. The assignment complains of the following paragraph of the court's charge: "Plaintiff pleads that if you find that plaintiff has failed to comply with contract, that he be allowed reasonable compensation for his services. Upon this branch of the case you are instructed that if you find and believe from the evidence that plaintiff's damages, if any, are a smaller sum than the balance, if any, of the contract price yet unpaid for such services, then you will find for plaintiff such difference, if any, and so say by your verdict." We are of the opinion that the charge should have been so framed as to have instructed the jury as follows: "Plaintiff pleads that if you find the plaintiff has failed to comply with the contract that he be allowed reasonable compensation for his services. Upon this branch of the case you are instructed that if you find and believe from the evidence that plaintiff did breach said contract, but you further find and believe from the evidence that *defendant's* damages, if any, are a smaller sum than the balance, if any, of the reasonable value of plaintiff's services, not to exceed the contract price thereof, then you will find for plaintiff such difference, if any, and so say by your verdict."

Appellant's eighth assignment is overruled, it not appearing from the record that appellant in the trial court requested a special charge embracing the matter complained of. Her assignment, therefore, can not be considered here under the rules.

We are of the opinion that the court's general charge sufficiently submitted under the law the matters complained of in appellant's ninth and tenth assignments of error and said assignments are therefore overruled.

We conclude, because of the errors complained of in appellant's first, second and fourth assignments hereinbefore sustained, that this case should be and the same is hereby reversed and remanded for a new trial.

*Reversed and remanded.*